**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0611. THE STATE v. JENNINGS.

RICKMAN, Judge.

Tarrance Jennings was indicted for two counts each of aggravated assault, aggravated battery, and possession of a firearm during the commission of a crime. Jennings filed a motion to bar the prosecution on immunity grounds pursuant to OCGA § 16-3-24.2. Following a hearing, the trial court granted Jennings's motion in part and denied it in part. The State appeals the partial grant of Jennings's motion.[1] We affirm.

---

[1] Jennings filed an application for interlocutory appeal of the partial denial of his motion to bar the prosecution, which was granted. Upon review of the entire record, we conclude that the application was improvidently granted and we dismiss his appeal by separate order. We nonetheless have jurisdiction to address the State's cross-appeal. See *State v. Yapo*, 296 Ga. App. 158, 159 (1) (674 SE2d 44) (2009) ("When the ruling of the trial court is in substance a dismissal of the indictment, the State may appeal an order dismissing an indictment under OCGA § 5-7-1(a) (1).")

"On appeal of an order granting or denying immunity under OCGA § 16-3-24.2, we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them." (Citation and punctuation omitted.) *State v. Sutton*, 297 Ga. 222 (1) (773 SE2d 222) (2015).

Viewed in the light most favorable to the trial court's ruling, the evidence presented at the hearing showed that in November 2013, Chadwick Finch called Jennings and asked him whether he had the money he owed Finch, then hung up. Minutes later, Finch called Jennings back and asked him where he was located. Jennings told Finch that he was on his way home and that they could talk when he arrived. As Jennings was walking toward his home, Tareyton Robinson, Finch's cousin, drove alongside Jennings and jumped out of the car. Robinson grabbed Jennings and Finch exited the car and helped Robinson drag Jennings into the back seat. Finch then drove the car as Robinson sat in the back seat with Jennings, choking and punching him. Robinson asked Jennings whether he had Finch's money and threatened to kill Jennings.

---

(citation and punctuation omitted); *Ga. Dept. of Transp. v. Douglas Asphalt Co.*, 297 Ga. App. 511, 513 (677 SE2d 728) (2009) (cross-appeal will survive dismissal of main appeal only where cross-appeal can stand on its own merit).

Finch stopped the car outside a friend's apartment and went inside while Robinson continued to choke and punch Jennings. When Finch returned, he and Robinson pulled Jennings out of the car. Jennings testified that he was lying on the ground next to the car, and that Robinson was on top of him and Finch was standing beside him. Robinson pinned Jennings's arms down with his legs while Finch searched Jennings's pockets. Robinson then resumed hitting Jennings and again threatened to kill him. When Robinson moved one of his legs, Jennings was able to reach into his sweatshirt, pull out his gun, and shoot Robinson. Finch then ran toward his friend's apartment door, and Jennings shot him in the back.

Jennings testified that he shot Finch outside the apartment and that Finch ran inside before falling down. Finch's friend testified that Finch ran inside her apartment, and that Jennings followed him inside and shot him there. She also testified that Jennings came back into her apartment two more times and stood over Finch, pointing a gun at him.

After the shooting, Jennings threw the gun in the sewer and went to his grandmother's house. He then called the police and told them that he wanted to turn himself in. Jennings gave a recorded statement to an officer with the City of Winder police department, and that statement was consistent with his hearing testimony. After

3

Jennings gave his statement, the officer took photographs of injuries to his neck, knees, and face, scuff marks on his shoes, and a rip in his shirt.

Robinson testified that he was shot in his right eye and was in the hospital for nine months. He stated that he could not remember anything about the day he was shot.

Finch testified that he called Jennings because he was upset about the fact that Jennings owed him money, and that he and Robinson just happened to drive past Jennings. Finch stated that Robinson stopped the car, Jennings got in voluntarily, and Jennings and Robinson had a discussion in the back seat on the way to his friend's apartment. Finch testified that when they arrived, he went and knocked on the apartment door. When he walked back out to the curb, he saw Robinson on top of Jennings on the ground. Jennings asked Finch to tell Robinson to get off of him, and Finch laughed and told them to "[c]hill out." Finch said that Jennings and Robinson were not fighting, just "tussling on the ground." When Finch heard a gunshot, he ran into the apartment and got about midway through it before he was shot in the back. After Finch had been shot, Jennings stood over him with the gun. Finch asked Jennings not to kill him, and Jennings responded that he would not.

The trial court ruled that Jennings "presented sufficient evidence to carry his burden of proving the reasonableness of his belief in the necessity of deadly force with respect to Robinson." The court concluded that Jennings had not met his burden with respect to Finch. Accordingly, the trial court granted the motion to bar the prosecution with respect to those charges arising from injuries inflicted upon Robinson and denied it with respect to those charges arising from injuries inflicted upon Finch.

The State contends that the trial court's finding that Jennings was justified in using force intended or likely to cause death or great bodily harm was not supported by the evidence. We disagree.

"[T]o avoid trial, a defendant bears the burden of showing that he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence." *Bunn v. State*, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). "Preponderance of evidence"

> means that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other. Nothing in this standard requires the elimination of all fact disputes as a matter of law. Rather, the standard requires only that the finder of fact be inclined by the evidence toward one side or the other.

(Punctuation and footnote omitted.) *Thompson v. State*, 327 Ga. App. 893, 894-895 (1) (761 SE2d 413) (2014).

A person who uses threats or force in accordance with OCGA § 16-3-21 "shall be immune from criminal prosecution therefor," except in certain circumstances not at issue here. OCGA § 16-3-24.2. Pursuant to OCGA § 16-3-21 (a),

> [a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

The State argues that Jennings's testimony was not credible because his claims of assault were not supported by physical evidence of more severe injuries and because his testimony about where he shot Finch was contradicted by other witnesses. Witness credibility, however, is an issue for the trial court as the finder of fact and we accept the trial court's factual findings if there is any evidence to support them. *State v. Yapo*, 296 Ga. App. 158, 160 (2) (674 SE2d 44) (2009). Jennings's testimony,

6

which was corroborated in part by Finch, provided some evidence that his actions with respect to Robinson were justified under OCGA § 16-3-21 (a). See id. Construed in a light most favorable to the trial court's ruling, with respect to injuries inflicted upon Robinson, "the evidence was sufficient for the trial court to determine that [Jennings] met his burden of proving that he was entitled to immunity from prosecution pursuant to OCGA § 16-3-24.2." (Citation omitted.) *State v. Green*, 289 Ga. 802, 804 (1) (716 SE2d 194) (2011); see *State v. Cooper*, 324 Ga. App. 32, 34-35 (1) (749 SE2d 35) (2013) (evidence could be construed in a manner to support trial court's conclusion that defendants' actions were justified).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.